Case number 14-5047, Janene E. Chambers, Appellant v. Sylvia Mathews Burwell. Ms. Renard for the Appellant, Mr. Schwabe for the Appellee. Good morning. Good morning, Your Honors. We're here today because the Department of Health and Human Services has put forth various reasons at different times for why they chose not to promote Janene Chambers, an African-American and blind employee, while promoting other employees. At first, Ms. Chambers was told, you deserve a promotion, we really want to promote you, but there's a lack of funds. There was a lack of position, wasn't there? There was a lack of a position because nobody created the position. And so the question becomes, just as in Evans v. Sebelius and Coens v. Shalala, why didn't they create this position to promote Ms. Chambers into when they were out creating other positions that cost far more and affected the budget far more? And then when we show that, that the money answer was sort of just ridiculous. How do you show that? I don't recall you showing it. We show that by showing that at the very same time there were approved, three GS-14s were approved to be promoted to the GS-14. Well, the problem is that your apples and oranges, right? They approved. You're not suggesting that because budget was invoked as a reason not to create a vacancy for her that they couldn't create any vacancies for anyone? No, I'm not suggesting that. Your claim has to rest on the fact, if it is a fact, that they created vacancies for others who were similarly situated, right? No, they don't have to be similarly situated. They don't. Just as in Evans v. Sebelius, we're not offering that to prove disparate treatment. We're offering that to show pretext. They give budget as a reason, but there was the budget. The real answer is they didn't want to spend the funds that they had on a promotion for Jim. Okay. Can I ask the other positions you're talking about, were they new positions that were created or were they promotions into existing positions? One was a new – well, they were new – this is the way HHS does it. They have three GS-11s acting division directors. They create three new positions, which are – I'm sorry, three GS-14 acting division directors. They create three new GS-15 division director positions. They restrict it to ACF. The three people who were the 14s apply. They are the only ones who apply. All three of them get the promotion to the 15. They did the same exact thing during this litigation. They created the GS-11 for Ms. Chambers. They restricted it to ACF. There's only Ms. Chambers who's qualified in ACF as a Section 508 coordinator. She's the only one who's qualified. She gets the position. That's the way they promote. So all three of the GS-15 positions didn't exist before? They were newly created positions? Right. They were newly created, but it wasn't a new slot for them because they knew they were going to put those three 14s in. So the increase in funds is still about $22,000. When you said in answer to Judge Griffith that similarly situated doesn't matter, I take it similarly situated matters for purposes of determining whether there's discrimination. No. It matters, but it's not required. This court held that in Stella v. Mineta and George v. Levitt that you don't need to show someone similarly situated. Also, Tchikulsky v. Mineta, where we're not offering the evidence of other people being promoted to show. You're not showing disparate treatment. You're arguing that the budgetary factor was a pretext. Yes, it was a pretext. But why cannot budget be relevant and nevertheless certain priorities be established? The ones in which there was a move to 14 and 15 were much higher rated people, were they not? Yeah, sure, there were 14s and 15s, but that wasn't the reason that they gave her at first. Then they switched it to not a priority. But when you think about it, not a priority is sort of like saying because I said so. It's not a reason, it's just a fact that it wasn't a priority. The question for a jury to answer... You're certainly not using the fact that she was subsequently promoted to an 11 as evidence that there was discrimination initially, right? No, no. That doesn't make any sense. No, I think the evidence that she was promoted to 11 and the way they did it is the same way they promoted the 15s to the 14s, and it just goes to show that this is the way that HHS promotes people. So for the appellee to try to hang their hats on the technicality that there was no vacancy, the way they create vacancies is they create vacancies for people they want to promote. All right, where's the evidence of discrimination? Well, there's the pretext, and Mr. Curtis is saying all along... The pretext is what? The pretext is Mr. Curtis is saying for five years I've been asking for a promotion for you. For five years I've submitted paperwork. He specifically says I've submitted paperwork. There is no paperwork. Have you sought the paperwork? We did seek the paperwork. Where? Well, in discovery and in our opposition we say point blank... In discovery you asked for the paperwork? In discovery you sought the paperwork? I'm not sure what the... It's not in the record, but I recall... Well, that's kind of important, isn't it? It is important, but it's also important that in the opposition we say, look, no paperwork pretext. They never come back and say, yes, there is paperwork. They never even allege, let alone produce, any paperwork. And Jason Donaldson, the person in the front office, says Mr. Curtis never said that Janine Chambers wanted a promotion. Now, I ask you, even if... No, she never said to me. Right. Even... He didn't testify. She never said. He said that she never testified to me. She never said it to me. Right, and that Mr. Curtis never asked me for a promotion for a 508 coordinator or for Janine Chambers. That, if he's believed, if all the people are believed, you have to ask yourself, what kind of advocacy was he doing to try to get a vacancy created for Janine Chambers? I thought the testimony was that, in fact, Curtis had sought for administrative support. He didn't ask for her name, but that would be fine. You're not supposed to ask for a name, are you? It's a position. If you believe defendant's witnesses, then yes, he asked for an administrative support position. But if you are a supervisor advocating for a position for your employee to be promoted to, when you advocate, you give specifics. You say, look, we need a GS-11 Section 508 coordinator. What's the adverse employment decision here? The fact that Curtis... I mean, Curtis said he didn't have the power to create the position, right? He had the power to advocate for a position. He had the power to get his management on board with, yes, it's a priority to upgrade our 508 coordinator, when every other agency, all the small agencies in HHS... So your claim turns on whether Curtis advocated for the position. My claim turns... Not only that, Curtis didn't advocate for the position, but he said he did. But the adverse employment action has to be the failure to create the position, not the failure to advocate for the position, right? But we've shown enough evidence to create an inference that this is how they create positions. People advocate. They find champions. Right. I'm asking you, but your claim, the adverse employment action about which you complain, and there's a legal question as to whether it's an adverse employment action, but the adverse employment action about which you complain is the failure to create a position. The failure to advocate for the creation of a position is just evidence. Yes, because we submit that if the position had been created and restricted to ACF, just as those 15s were... How do you know if Curtis had advocated? How do you know the position would be created? We don't know that for a fact. A jury has to decide that. These are jury issues. The question is, well, how do we know if there's no discrimination, the person would be promoted in any promotion case? You don't know that. You can only infer it from the evidence. So for our decisions and Supreme Court decisions, it's not the case that just because you can show pretext, that means there's discrimination. In other words, you have to show... You can't just stop at pretext and say, I get to go to a jury because there's evidence of pretext. There has to be evidence from which a reasonable fact finder can conclude that there was discrimination. There doesn't have to be. That a reasonable fact finder, there has to be evidence... The Supreme Court has said in Reeves that in the usual case, pretext is enough. But that's because pretext might tell you that there's discrimination. Right. I mean, it's not the case that just because you show pretext, you automatically get to a jury. It has to be pretext that would tend to show discrimination. Yes. Okay. Yes, I agree. And I've looked at a recent case that you authored that indicated that. But what I'm trying to say is that it's not just the pretext. There's also dishonesty about this advocacy, this giving paperwork. Why is it pretext? I'm not even sure it is pretext. Even if you're correct that the supervisor said he advocated a new position for your client and he didn't. Why is that a pretext? Well, it's a lie about a material fact. Well, is that necessarily a pretext? I think, as the Supreme Court said in Reeves, a jury can infer from dishonesty about a material fact. Even if it's not the reason, dishonesty about a material fact shows guilt. It's right in the Reeves decision. It's the second sentence of the two sentences that Herbie's quoted. It could be dishonesty without being a pretext, couldn't it? Sure. A pretext. But that's for a jury. The typical pretext is, this is the reason why somebody was not promoted. That turns out to be false. That's a pretext. But we really don't have a pretext here. You may have dishonesty, but it's not a pretext, is it? Well, but you also have the lack of funds was given as a reason. So as to that, I'm not understanding the pretext about that. Because what's the disconnect between saying there's no funds and it wasn't a priority? Because it's always the case that you have priorities within funds. Forget shifting reasons. I shouldn't have framed it that way. They say lack of funds. We show there are funds. They don't exactly shift completely. But there are funds for what? There are funds if they want to spend them. They didn't want to spend them on Jeanine Chambers. The question, as in Coens versus Shalala, is why? They didn't want to spend them on creating a new position. And they've offered business reasons for not. No, they haven't. What's the reason that they don't want to create a GS-11 508 coordinator when every other 508 coordinator in their agency, for tinier agencies, are 12s, 13s, and 14s? What's the reason? Typically the questions go this way. Okay. Typically the questions go this way. Okay, but I don't think they've offered a reason. They offered a reason for why they allocated their budget the way they did, why they upgraded certain positions, right? No, I don't think they did. I don't think they said why a 508 coordinator was not a priority. They've explained why they made the other decisions. They have not explained why putting a 508 coordinator at a GS-11 was not important when every other agency had a higher graded. She was a 9. Okay. Thank you. Thank you very much. May it please the Court, Alexander Shoaib for Appellee. Your Honors, two major points in this case. One, there was no adverse action here. Under the law, there's no adverse action at all. Can I just ask you a question about that? Sure. Suppose the plaintiff says, what I'm complaining about is a failure to create a new position. Take it out of the government context. Just say it's a private sector employer, and the way they divvy up their workforce is they make every pay grade a new position. So every promotion has to be creation of a new position. And the complaint is, you didn't create a new position for me, i.e., you didn't promote me. There's all kinds of other people that are not part of the protected class that you did promote by creating a new position. Is it actually the case that you would say, well, there's no adverse employment action because there's no creation of a new position, ergo you don't even get past the starting block? Even if you could show, the plaintiff could show, all kinds of non-minority applicants had positions created for them, but I didn't have a position created for me. Two responses. First of all, there's no case law that indicates that not creating a position for somebody is an adverse action. How could that not be a claim? My response to your second point is, that's not the case here. Put aside this case. I get the point that you think that's not the case. That is not a good answer to a hypothetical. My question is, as a matter of law, you're taking the position that non-creation of a new position is, as a matter of law, not an adverse employment action, and therefore you don't get past the starting block. And my question is, how can that be right? Because there have to be situations in which somebody has a viable claim of discrimination predicated on non-creation of a new position, where they say, you didn't create a new position for me. You created a new position for 49 other people that are just like me, who wanted a promotion. They happen not to be minorities. I happen to be a minority. You created a position for all of them. You didn't create a position for me. Is it actually the case that the employer gets to say, non-creation of a new position is just not an adverse employment action. I'm sorry you don't get past the starting block. You're a GS-9. And every other GS-9 that wants a GS-11 has to have a GS-11 created for them. There are no GS-11s in creation. And all these non-minority-sided people that are GS-9s say, would you please create a GS-11 position for me? And they say, fine, we're going to do that. And then she says, create one for me. And they say, no, we're not going to do that. In that hypothetical, I think they'd have a better argument. But let me give you another hypothetical. Suppose the plaintiff asserts that I ask my supervisor to create a higher-grade position for my job. And my supervisor said, well, no, I don't want to do that because you're blind and you're black. Well, that would be a great case. But that's discriminatory animus, which there's not a shred of here. But under your theory, since there was no job, as a matter of, there's no adverse action. I'm saying that... Well, you would have conceived that your position can't be right, as a matter of principle, from both Judge Srinivasan's question and my question. If in my question, it's clear, the supervisor said, yeah, we would create a new job, but we're not going to do it for you because you're black and blind. It's an adverse action. I'm sorry, Your Honor. I'm not going to go that far because I don't think there's any case law that says that not creating a position is an adverse action. I'm going to say that's clearly discriminatory animus. I'm not going to say it's not discrimination. But discriminatory animus doesn't matter if you don't have an adverse action because you have to have an adverse action just to get out of the starting game. So I think the point of these questions is it's hard to stomach the proposition that any time a claim is predicated on non-creation of a new position, as a matter of law, you don't get past the starting block because there are hypotheticals in which, boy, that sounds like something that Title VII should offer a recovery for. But it's a slippery slope, Your Honor. Well, it may be a slippery slope, but it's a slippery slope that at least fences in claims that ought to be. Are you saying that those claims shouldn't go forward? No. I'm saying that to say that any time that an employee says, I should have a position created for me. No, no, I'm saying that there's two claims before you, the one that I outlined and the one that Judge Silberman outlined. Are you saying that from the government's perspective, those claims don't go forward because there's no adverse employment action? I'm saying that in the case that you suggest where the only way that a person can get a promotion to a GS-11 is by the creation of a position and only whites are getting it, whites with sight are getting it, and a black person who is blind doesn't get it, I think that that's a better argument. I'm not going to create an argument. It might be a better argument because it's more sympathetic, but based on your legal principle, which is that you need to allege something other than creation of a new position, otherwise, as a matter of law, your claim fails. How can that person get past the starting gate? So there must be some claims, either my hypothetical or Judge Silberman's hypothetical, where you get past the starting gate, even though your claim is predicated on non-creation of a new position. Now, there may be all kinds of arguments that say, look, creation of a new position almost always is non-discriminatory because there's all kinds of good reasons why the employer doesn't want to create a new position. So you don't get past the finish line. But to say that you don't even get past the starting gate, merely because your claim is predicated on non-creation of a new position, when there might be all kinds of situations in which non-creation of a new position is discriminatory, is a difficult proposition to sum up. I understand the argument. I think it would be a very, very narrowly defined set of circumstances, perhaps like the ones Judge Silberman and you bring forward, but nothing, and again, I'm here arguing this case, nothing at all like this case. In this case, we're talking about… But we have to decide, I guess we have to decide on what ground to rule. And if we decide on the ground that you put forward first, which is that non-creation of a new position as a matter of law is not an adverse employment action, then I don't know how the claims that come forward someday, maybe they'll never come forward, but someday someone's going to make the claim that I outlined or that Judge Silberman outlined, and then we would have a decision that says that claim doesn't get out of the starting gate. Well, the good news for this court, I believe, based on what you're saying, is that you don't have to decide based on that alone because there is… Well, that's what you've asked us to do. You've asked us to adopt a categorical rule, and Donald Douglas and all of Title VII says stay away from that. So I think that's what you're seeing discomfort with is the government's argument that asking us to adopt a categorical rule in this situation. Well, the government's argument, again, is twofold, and I understand… Maybe you better get to the second part of it, yeah. I'm sorry. Maybe you better get to the second part of it. And the second part, again, is that there is absolutely no evidence of discriminatory animus here. And, you know, as far as the arguments raised here, and I think that Your Honors addressed them exactly the way that I would, which is that, you know, you can say that they were shifting reasons, but they're all budget. They're all based on budget. After all, you have to… An agency has a right to decide how it's going to spend its money, and I was this morning driving and trying to think of an analogy, and the one that I came up with is from a personal level is if my roof caves in and I need a new roof and it costs $15,000 for a new roof, and then my daughter comes to me and says, well, you just spent $15,000 on a new roof. Can you, you know, why can't we just get $1,000 for a bigger TV? I'm going to say, because that's not how we're budgeting our money. It's so far afield. There were no shifting reasons here. It clearly was budget the whole time, not to mention the fact that every comparator they use is a $14,000 and a $15,000. In the record, there are concessions by the plaintiff that they do involve different duties and that there's not a valid comparison between a GS-9 or a GS-11 and a GS-14 and a 15. Again, and there was a desk order here, and that's the other important point here, is that she had a GS-9 position. Curtis tried to get her a position. He didn't specifically say, I want a position for Jean Chambers. He tried to get a position, which ultimately she did, in fact, get. And the desk order indicated that her job was properly graded as a GS-9. So based on these reasons and based on what we've gone over before, Your Honor, I would ask the Court to affirm the correct holding of the District Court, if you have no further questions for me. Thank you. Go ahead. We'll give you back a couple minutes. I just wanted to point out with regard to the question of whether there's shifting reasons or pretext. Shifting reasons, they don't conflict. They're shifting, but they don't conflict. They sort of morph. When you tell your daughter, no, you can't have $1,000, even though we spent $15,000 on the roof, because that's not the way we're spending our money, that's different than just saying there's no money. Because that's what they told her. They told her there's a lack of funds. And then she sees all these other promotions going on around her. We say that in litigation, and only then do they say. Well, I don't know. I mean, I've got to say, if I have a daughter and if she asks for $1,000, I think I'd feel entirely comfortable saying we don't have any money, even if I just spent $15,000 on a roof. It just seems like the natural thing to say. So then you're saying that they treated her like a child. I'm not saying that. I'm taking your hypothetical and saying that it seems natural to say we don't have money when what you mean is we don't have money for the thing for which you want money. We have money for other things. So what is the reason that they didn't have money? I know I'm asking a question again. They haven't put forth a reason. They have not put forth a reason for why it was not a priority, given the fact that every other 508 coordinator. You know, ACF is the biggest agency in HHS. That's their biggest agency. And she's a nine. And every other 508 coordinator. Didn't the opposing counsel just address that by saying they were very dissimilar positions, that they were 508 coordinators, but they also had other responsibilities and were different grades? Doesn't that respond? Well, it's responding, but that's a question of fact. Isn't it resolved by the desk audit? No. Why? Because the supervisor controls the desk audit. There is testimony in the record, and I'm looking for it right now, of another 508 coordinator who is a GS-12. Yes, Jamie Robinson, and it's at Joint Appendix 178. And he testifies. He's a GS-12 508 coordinator. He has no other duties. He's a 508 coordinator for the Office of the Secretary, which is much smaller than ACF. He's a 12. She's a nine. And I'm not saying, you know, we're not trying to do an apples-to-apples comparison. Yeah, you're not trying to discriminate because of the juxtaposition of these two? I'm saying what's the reason that they didn't want to give her an 11 back then?  The reason is it's not a priority. Why isn't it a priority? Is it because she's blind? Every other 508 coordinator can see, and they are all higher than her. And while it might not meet the technical McDonnell-Douglas standard, the court has held, this court and the Supreme Court has held, you don't have to fit things into the little box of McDonnell-Douglas. The facts vary in cases. And here you have a black and blind employee who's doing 508 coordinating for a bigger agency than anyone else, and she's a nine. And they're all higher. And the supervisors agree that she's superior. But now you're arguing there was discrimination not to promote her because her job was so important. That's a different position you're taking now. Wait, you're saying I'm not? I lost you. You're saying there was discrimination not to promote her because her job was undervalued. Because why do I think it's discrimination? Yeah, you're making a different claim now. You're claiming, hey, she was discriminated against. She should have been an 11 because she was mischaracterized. Her job was more important than a nine. At that point, yes. That's a different theory now. I don't think it's different. It's not conflicting. It's shifting, isn't it? Just a little more thing. No, I mean, I think it goes together. We're saying that they had every reason to want to make her at least an 11. They had reasons to do it, and they haven't told us what the reason is that he didn't advocate the way he told her he was advocating. He told her he was submitting paperwork. He told her he was. . . How can you advocate for a 508 coordinator if all you ask for is administrative support at the 11? That's all he asked for, according to the front office. Great. Thank you very much. We have your argument. The case is submitted.
judges: Griffith, Srinivasan, Silberman